UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEE ANN EVANS, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>BIRD RIDES, INC., et al.,<br><br>        Defendants. | Case No. 19-cv-01207-VC<br><br>**ORDER RE MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 55, 58, 59, 61, 63 |

All claims except those brought by Evans against Oakland, Richmond, Bird Rides, and Neutron Holdings are dismissed for lack of standing, with leave to amend. With respect to the remaining claims brought by Evans, Oakland and Richmond's motion to dismiss is granted as to the claims under California Government Code section 4450 but denied in all other respects. Bird and Lime's motion to dismiss is granted as to the claims under Government Code section 11135 but denied as to the claims based on the Disabled Persons Act and public nuisance. Although the Court is somewhat skeptical that Evans will be able to prove her allegations about the extent to which scooters are interfering with her access to public sidewalks in Oakland or Richmond, the Court must accept those allegations as true at this early stage in the case. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 556 (2007).

A. Standing

1. To satisfy Article III's injury-in-fact requirement, the plaintiffs must plead facts with enough detail to show that they have suffered concrete and particularized injuries that are fairly traceable to the defendants' conduct. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Plaintiffs Hill, Anderson, and Duckwall claim to have been harmed by their "encounter[s] [with]

Electric Vehicles . . . on a widespread basis throughout the Cities," but these allegations are not specific enough. *See* Complaint ¶¶ 69-70; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("The complainant must allege an injury to himself that is distinct and palpable . . . ."). These plaintiffs are granted leave to amend their complaint alleging specific incidences of injury, assuming they can do so consistent with Rule 11.

    2. Evans has standing to sue Oakland and Richmond for legal injuries arising from scooters strewn about their sidewalks. The cities have a duty under the ADA to maintain the accessibility of sidewalks, and Evans, who is blind, alleges that she has been denied access because scooters are left blocking the paths. *See Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). Evans's injuries are thus traceable to city inaction, and the Court could redress her harm by ordering Oakland and Richmond to ensure that their sidewalks are accessible. But Evans has not alleged any injuries that are fairly traceable to the actions of the other seven cities, so those claims are dismissed with leave to amend. *See* Complaint at ¶¶ 72-78; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

    3. Evans also has standing to sue Bird and Lime. The companies are not the immediate culprits – their customers are. But the scooter-on-demand business model requires customers to deposit the scooters alongside sidewalks, so the customers are not independent third parties whose actions break the chain of causation. *See* FAC at ¶¶ 37-38, 102. It was predictable, not just foreseeable, that the scooters would sometimes be parked carelessly and block the paths. The injuries that result from these blockages are therefore traceable to the companies themselves.

### B. Claims Against Cities

    1. Evans has stated claims against Oakland and Richmond for violations of Title II of the ADA and Section 504 of the Rehabilitation Act. These statutes require that local governments maintain sidewalks such that they are accessible to people with disabilities. *See Barden*, 292 F.3d at 1077. Evans has adequately alleged that she was denied full and equal access to the sidewalks in Oakland and Richmond "solely by reason of her . . . disability." 29 U.S.C. § 794 (Rehabilitation Act); *see also* 42 U.S.C. § 12132 (ADA); *Barden*, 292 F.3d at 1077. A person

without disabilities can easily avoid obstacles on the sidewalk; this can be difficult or impossible for a blind person. And although temporary denials of access do not violate the ADA, Evans has alleged that the abandoned scooters collectively give rise to a lasting and pervasive denial of access. *See Cohen v. City of Culver City*, 754 F.3d 690, 699 (9th Cir. 2014); FAC ¶ 67-70. To the extent *Labowitz v. Bird Rides*, No. 2:18-cv-9329-MWF-SK (C.D. Cal. Oct. 29, 2019), is inconsistent with this ruling, rather than merely reflecting a deficiency in the way the plaintiffs in that case pleaded their claims compared to the plaintiffs here, this Court disagrees with *Labowitz*.[1]

2. Evans has also stated claims against Oakland and Richmond for violations of two analogous California laws: Civil Code section 54 (the Disabled Persons Act) and Government Code section 11135. Violations of Title II constitute violations of these two statutes, so these claims may proceed as derivative of her ADA claims. *See* Cal. Civ. Code § 54.1(d); Cal. Gov't Code § 11135(b).

3. Evans has adequately stated claims against the cities for injuries arising from dangerous conditions of public property in violation of California Government Code section 835. "The definition of 'dangerous condition' is quite broad," and it can reach property that is not dangerous in a colloquial sense. Cal. Gov't Code § 830 comments; *id.* (offering "offensive odor" as an example of an injury actionable under the dangerous-condition statute). Even intangible injuries are actionable under the statute if they are "of a kind that the law would redress if it were inflicted by a private person." Cal. Gov't Code § 830 comments; *id.* § 810.8; *Delta Farms Reclamation District v. Superior Court*, 33 Cal.3d 699, 710-11 (Cal. 1983). Evans's alleged injuries (denial of access to the sidewalks) are analogous to the injuries a plaintiff suffers when a private business maintains its property in a way that denies access to disabled people, so they can support her section 835 claims as well. *See* Cal. Civ. Code §§ 54.1, 54.3.

---

[1] Some of the Title II and section 504 claims appear to arise not from the physical obstacle posed by abandoned scooters, but from a fear of moving scooters. These claims have been dismissed for lack of standing, but it seems unlikely that this sort of psychogenic difficulty gives rise to denial-of-access claims under Title II or section 504.

Although the sidewalks themselves were not damaged or in disrepair, the cities can be liable for dangerous conditions "created by the presence of privately owned property" on adjacent land. *Huffman v. City of Poway*, 84 Cal.App.4th 975, 988 (Cal. Ct. App. 2000); *Bonanno v. Central Contra Costa Transit*, 30 Cal.4th 139, 154 (Cal. 2003) (finding it "well established" that "the *location* of public property, by virtue of which users are subjected to hazards on adjacent property, may constitute a 'dangerous condition' under sections 830 and 835" and "that a physical condition of the public property that increases the risk of injury from *third party conduct* may be a 'dangerous condition' under the statutes"). This situation is analogous. According to Evans, the cities have promoted the use of scooters, developed "mutually beneficial, symbiotic relationship[s]" with Bird and Lime, and "created and maintained [conditions giving scooters] easy access to their sidewalks." FAC ¶¶ 64, 135; Oakland, Cal., Ordinance 10.18.040 (Sept. 17, 2018), Dkt. No. 60-2, at 3-4 ("[D]ockless shared scooters may be parked in acceptable areas of the right-of-way, including the 'furnishing zone' if one exists, or at the curb side in areas with narrow sidewalks and no furnishing zone."); *see also Quelvog v. City of Long Beach*, 6 Cal.App.3d 584, 591-92 (Cal. Ct. App. 1970) ("[T]he allegations of the actions of the City in creating and maintaining easy means of access to the sidewalks by autoettes without warning the operators to keep them off the sidewalks and the alleged encouragement of the operators to use them are sufficient to state a cause of action against the City for creating and maintaining a dangerous condition."). At least based on the facts alleged in the complaint, it was foreseeable that the physical proximity of the areas intended for scooter riding and parking could endanger a disabled person's access to the rights of way. *See Bonanno*, 30 Cal.4th at 149 ("That the location of a public improvement or, more broadly, its relationship to its surroundings, may create dangers to users is by no means a novel idea."). The Court thus cannot rule in favor of the cities on this claim at the pleading stage. *Bonanno*, 30 Cal.4th at 148 ("The existence of a dangerous condition is ordinarily a question of fact . . . .").

4. Evans may proceed with her nuisance claims against Oakland and Richmond on the theory that she was "specially injur[ed]" by the presence of carelessly parked scooters. *See* Cal.

Civ. Code § 3493. Particularly at the pleading stage, the Court cannot foreclose the possibility that Evans has been specially injured. If the affected sidewalks remain accessible to all but the disabled, a jury could find that Evans's injury is different in kind from that suffered by the general public—merely annoying to most while specially injurious to some. *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550 (2009). Again, to the extent *Labowitz* is to the contrary, this Court disagrees.

     5. Evans's claims under Government Code section 4450 are dismissed without leave to amend. That section relates to building standards and does not create a cause of action for obstructions placed on top of the sidewalks. Evans has not cited, and the Court cannot find, cases supporting a contrary reading.

### C. Claims Against Bird and Lime

     1. Evans's claims under Government Code section 11135 are dismissed without leave to amend because Bird and Lime are not recipients of state funding subject to the requirements of that section. The implementing regulations specify that a company is a "recipient" of state funding only if it receives more than $10,000 in state financial aid per year (or more than $1000 per transaction). Cal. Code Regs. tit. 2 § 11150. Qualifying aid must be in the form of funds, services of state personnel, or interests in real or personal property. *Id.* Evans alleges that the scooter companies receive the benefits of state aid because the cities – themselves recipients of state funds – allow the companies "to possess and use the Pedestrian Rights of Way for their corporate profit." FAC ¶ 154. But these assertions do not support the conclusion that the scooter companies receive qualifying aid in excess of $10,000 per year, and Evans has not explained how she could plausibly allege that they do.

     2. Evans has stated claims against the scooter companies for violations of California's Disabled Persons Act. The statute imposes liability on any "person . . . or corporation who denies or interferes with" a disabled person's "full and free use of the streets . . . sidewalks, [and] walkways." Cal. Civ. Code §§ 54(a), 54.3, 55. Evans's allegations that Bird and Lime scooters have blocked her path and caused her to trip are enough to support her claims that the defendants

have interfered with her access in violation of the statute. *See* FAC ¶¶ 73-74; *Ruiz v. Musclewood Inv. Props., LLC*, 238 Cal. Rptr. 3d 835, 842 (Cal. Ct. App. 2018) (holding that a company whose guard dog attacked a seeing-eye dog could be liable for interfering with the blind plaintiff's enjoyment of the sidewalks).

    3. Evans may also proceed with her nuisance claims against Bird and Lime. As previously discussed, whether her denial of access constitutes an injury different in kind from that suffered by the general public is a question of fact. *See supra* Section B.4. The companies also argue that they are not responsible for the nuisance (assuming one exists), because their terms prohibit the kind of careless parking that gave rise to Evans's complaint. *See* Dkt. No. 76, at 9. But the degree of their responsibility for the nuisance is also a question of fact not to be resolved at the pleading stage.

*   *   *

Any amended complaint must be filed within 21 days of this order, and the defendants must answer or otherwise respond to any amended complaint within 14 days of its filing. Meanwhile, discovery may proceed immediately on the claims that survive this ruling. The relevant defendants and Evans must exchange initial disclosures within 21 days of this order.

**IT IS SO ORDERED.**

Dated: November 8, 2019

VINCE CHHABRIA
United States District Judge